IN THE

# SUPREME JUDICIAL COURT,

IN THE

## COUNTY OF PISCATAQUIS,

ARGUED AT JUNE TERM, 1846.

---

### ISAAC FARRAR & al. *versus* RICHMOND LORING & al.

The rule, that it must appear by the record, that courts of local and limited jurisdiction have verified every fact necessary to give them jurisdiction, is not applicable to the District Courts of this State. Where, therefore, the process contains the proper averments to give that Court jurisdiction, and the Court acts in the matter, the presumption arises, that it had become satisfied of the existence of all the facts necessary to give it jurisdiction.

Where application is made, under the statute of 1842, c. 33, by the county commissioners to the District Court, to appoint a committee to locate the land reserved for public uses in townships granted by the State, after the statute of 1828, c. 393, went into operation, it is not necessary that notice should be given to the owners of the land prior to the appointment of such committee. If the owners of such townships have any title whatever to the lands thus reserved for public uses, such proceedings to which they are not a party cannot have any effect to destroy or impair it. Notice, however, is to be given by the committee before they proceed to the performance of their duties.

Inhabitants of the county wherein the lands lie may be legally appointed as such committee.

The Court would not readily grant a writ to bring proceedings before it to be quashed for neglect to comply with statute provisions, when compliance was shown to be impossible. But it is a sufficient answer to an objection, that the notices were not posted in the township by the committee, or in public places therein, that the record states that they were.

Where lands were granted by the State subsequent to the act of 1828, c. 393, it is not necessary that the committee should designate, at the time of locating the reservations, the uses for which they were reserved.

It is no sufficient cause for granting a writ of *certiorari* on the petition of the owners of the township, that the lots located for public uses contain a less quantity of land, than there is reserved in the grant.

Whether lands better than an average quality have been run out and located for public uses, may or may not be properly presented and considered in the District Court, when the acceptance of the report is under consideration; it cannot properly arise or be discussed upon a petition for a writ of *certiorari* to quash the proceedings.

This was a petition for a *certiorari* to the end, that certain proceedings in locating the lands reserved for public uses in certain townships, in which they were interested, might be quashed.

No copy of the petition came into the hands of the Reporter. The facts sufficiently appear in the opinion of the Court.

The case was fully argued by

*Rowe,* for the petitioners — by

*Blake* and *Robinson,* for the County Commissioners — and by

*Hobbs,* for a purchaser of a portion of the reserved lands.

*Rowe,* in his argument, (the main points made therein appearing in the opinion of the Court,) cited st. 1842, c. 33, § 21; Rev. St. c. 3, § 11, and c. 122; 4 Mass. R. 627; 2 Mass. R. 118; 1 Mass. R. 87; 7 Mass. R. 163; 3 Mass. R. 229; 2 Mass. R. 489; 2 N. H. R. 100; 3 Greenl. 438; 8 Greenl. 137; 1 Fairf. 335; 14 Mass. R. 222; 14 Pick. 276; 6 Greenl. 430; st. 1821, c. 41, § 1; 8 Greenl. 271; 1 Fairf. 24; 11 Mass. R. 468; 8 Greenl. 146; 2 Fairf. 473; Rev. St. c. 122, § 3.

*Robinson* cited st. 1821, c. 41, § 1; 19 Maine R. 338; 11 Mass. R. 419; 6 Pick. 470; 18 Pick. 309; 11 Pick. 322; 8 Greenl. 137; 23 Maine R. 10; 1 Mass. R. 256; 14 Mass. R. 490.

*Blake,* for the County Commissioners, cited Rev. St. c. 97, § 18; 15 Pick. 238; 4 Mass. R. 171; 23 Maine R. 433; st. 1842, c. 33, § 21; Rev. St. c. 122; st. 1821, c. 41 § 1;

7 T. R. 270; 3 Wils. 133; 3 Johns. R. 468; 2 Pick. 592; 21 Pick. 536; 8 Greenl. 137; 14 Mass. R. 224; 14 Pick. 276; 15 Mass. R. 198; 11 Mass. R. 413; 20 Pick. 71; 15 Pick. 1; 9 Pick. 46; 9 Greenl. 414. He also replied to the argument for the petitioners.

*Hobbs*, in his argument, cited st. 1842, c. 33, § 21; Rev St. c. 122; 16 Maine R. 349; 3 Greenl. 433; 2 Mass. R. 170; 4 Mass. R. 627; 3 Mass. R. 229; 7 Mass. R. 158; 8 Greenl. 137; 23 Maine R. 10.

The opinion of the Court was drawn up by

SHEPLEY J. — The owners of township numbered three in the thirteenth range, and others interested in it under them, desire to bring before the Court the record of proceedings of a committee appointed on application of the county commissioners of this county to run out and locate the lands reserved for public uses in that and other townships. Thirteen errors in those proceedings have been assigned; but it will be sufficient to consider those insisted upon in argument.

It is alleged, that the record does not show, that the district court had jurisdiction under the act of March 18, 1842, c. 33, § 21, because the Court did not determine, that the township had not been incorporated; that the reservations for public uses had not been located; and that there was valuable timber or grass on them, liable to be taken off by trespassers. In the petition these averments were made, and the case as presented therein, was one, over which that Court had jurisdiction, and from its proceeding to appoint a committee to perform the duties required by the act, the presumption, similar to that, which exists after the finding of a verdict, arises, that the Court had become satisfied of the existence of all the facts necessary to enable it to exercise that power. The rule, that it must appear by the record, that courts of local and limited jurisdiction have verified every fact necessary to give them jurisdiction, is not applicable to the District Court.

Another objection, esteemed to be most material is, that the proceedings, until after the appointment of the committee,

Farrar *v.* Loring.

were *exparte*, and without notice to the owners of the township.

Upon revision of the statutes, the words " no sufficient cause being shown to the contrary," contained in the statute, c. 41, § 1, were omitted in the statute, c. 122, § 1.   The act of March 18, 1842, c. 33, § 21, provided for the location of lands reserved for public uses in townships unincorporated, and directed, that the same proceedings should take place as are prescribed by the statute, c. 122, on the application of assessors, to have such lands located in incorporated towns or plantations.   There is no statute requiring, that notice should have been given to the owners of the township in this case.   It is still insisted, that natural justice required such a notice, and several decided cases are referred to, as sustaining the position.   If they might be, and probably were entitled to hold such lands and to enjoy the use of them, until the township should be incorporated ; and if such right would be destroyed by these proceedings, as the counsel contends, there might be just reason to insist upon such a notice.   This township was granted subsequent to the passage of the act of February 10, 1828, c. 393, § 4, which provides, that there shall be reserved in every township thereafter sold " one thousand acres of land, to average in quality and situation with the other land in such township, to be appropriated to such public uses for the exclusive benefit of such town, as the legislature may hereafter direct."

Whatever may have been the rights of grantees under former reservations made and declared to be appropriated to particular uses, it does not follow, that they would have any to the use of the lands reserved, since the passage of that act.   But it is not the design to express any opinion in relation to it.   For the proceedings under the act of 1842, are originated and conducted by official persons acting in their official character ; and the act does not contemplate or provide for any examination, trial, or decision of adverse rights.   If the owners of the township, had any title whatever to the lands thus reserved for public uses, these proceedings, to which they are not a party, cannot have any effect to destroy or impair it.   The design of

the act is to cause the proceedings to take place upon an apparent state of facts for the public good, and the especial benefit of the future, if not present, owners of the lands within the township. The legislature for such a purpose and duty might by the act have selected its own permanent agents, and might at its discretion entrust their appointment to a court of justice, and provide the mode, by which its power should be called into exercise. In such cases no person having a private interest is supposed to be present,·or to be heard in the selection of the agents, the whole proceedings in the selection, being conducted by official persons. The great distinction between such cases and those found in the decided cases referred to, consists in this. In the latter the private rights or property of the parties were conclusively affected by the proceedings, while such is not the effect of the proceedings in the former. In this case the committee had no power to take private property, or to impose a servitude upon it. So far as it might be just or necessary to secure to the owners of the township an opportunity to be heard upon the question, whether the lots were run out and located equitably according to the provisions of the statute, it was accomplished by the notice to be given by the committee, before they proceeded to the performance of their duties. This notice would enable them to be present to counsel them, to inspect their proceedings, and to present their own claims for consideration. They might thus become informed of the time, when their services were completed, and the law would inform them, that they must be presented to the next District Court in the county, for acceptance, where they might appear and be heard with respect to their acceptance.

Another allegation is, that the committee, being citizens of the county, were interested in the location of the lands reserved for public uses, and therefore incompetent to make it. The alleged interest arises out of a provision of the statute, which authorizes the county commissioners to seize and sell timber, grass, or hay, cut by trespassers on such lands, and requires them, after deducting all reasonable expenses, to pay the pro-

ceeds to the county treasurer; and that officer is required to keep a just account thereof, and to pay the same to the treasurers of the towns rightfully owning it, whenever applied for. The argument is, that the amount thus received will be large, that it may be a long time before this township will be settled, incorporated, and have a treasurer to call for the money, that the county in the mean time will have the use of the money without interest to be paid for it, and that the citizens of the county thereby become interested. The statute requires that citizens of the county should be appointed, and that they should be disinterested. If no citizen could act, the provision of the statute would prove to be abortive. The word disinterested in the statute, doubtless, was used to exclude those persons, who were interested in or owners of the lands, from being appointed on the committee. Without inquiring whether the county could derive any such benefit, as the argument supposes, it will be suficient to remark, that the supposed interest, if there be one, is a corporate interest and not a personal one, and quite small, remote, and contingent. Such a contingent interest will not disqualify the person to act in such a capacity. *Commonwealth* v. *Ryan,* 5 Mass. R. 90.

Another objection is, that the notice required by the statute has not been given. The record states, that they gave notice of their appointment and of the times and places of their meeting to perform their duties, stating particularly each time and place, thirty days at least before those times. The Court designated the Age and the Piscataquis Farmer as the newspapers, in which the publication of notice was to be made. It was published in the latter on July 18, and in the former on July 25, 1845; and the earliest day appointed for the performance of their duties was August 27, 1845. The record further states, that the notice was posted on July 30, 1845, "on said township No. 3, Range 13th, one at the northwest corner of lot No. 6, and one where the monument line strikes the west shore of Chesuncook lake." The day appointed to commence on this township was Sept. 10, 1845. It is insisted, that this was not, and that there could not be, a compliance

with the provisions of the statute. The Court would not readily grant a writ to bring proceedings before it to be quashed for neglect to comply with statute provisions, when compliance was shown to be impossible. The location of lots reserved for public uses was first provided for in towns and plantations, and the statute required the notice to be posted in two public places in the town or plantation. When provision was subsequently made for the location of such lots in unincorporated townships, the statute required the same proceedings; and it must receive a reasonable construction in conformity to the obvious intention of the legislature, that the proceedings should be the same so far as practicable, and as intending, that the notices instead of being posted in a town or plantation should be posted in the township, and in places as public, as there might be found in such township. That there may not be places in such townships so much resorted to as to become known and public, it would not be safe for the Court to conclude, when the record speaks of places so public as to have acquired a distinct name; such as "Norcross' landing," "Wyman's camp," "Chesuncook farm," "Northeast carry," and "Black brook shanty." It is however a sufficient answer to the suggestion, that the notices were not posted in the township, or in public places in it, that the record states, that they were.

A further objection is, that the committee have not in their report designated the uses, for which the lands were reserved, as the statute requires. The statute, c. 122, § 1, having been framed with a view only to such reservations, as were formerly made, when the uses were designated at the time of making the reservation, this provision cannot be applicable to reservations of a different character, made by virtue of the act of 1828, the uses of which were not at the time of the reservation, and do not yet appear to have been declared.

Again it is said, that it does not appear, that the thousand acres, reserved for public uses, have been fully run out and located. The record describes one lot of a mile square containing six hundred and forty acres as located. It states that

another lot designated by lines and distances' on three sides and bounded by the Chesuncook lake on the other side, was run out and located, "said lots being set off in full for the one thousand acres reserved in the grant of said township." Whether the last lot would contain the remaining three hundred and sixty acres may perhaps depend upon its extent into the waters of the lake. If the Court may not be judicially informed, that the lake is but an enlargement of a stream of running water, it may not be so informed to the contrary, and it cannot therefore conclude from the record presented, that the lot may not contain the requisite number of acres. If such be not the fact, it would not be a grievance to the petitioners, that too small a quantity of land had been taken from their township for public uses, especially when they at the same time contend, that the lots located were more valuable, than they ought to have been. Whether, as contended, lands better than an average quality have been run out and located for public uses, might be properly presented and considered in the District Court, when the acceptance of the report was under consideration, but it cannot properly arise or be discussed upon this petition.                                        *Writ refused*